# STANDARD CHEVROLET CO. v. FEDERAL HARDWARE & IMPLEMENT MUTUALS.

## No. 5536.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

Rehearing Denied Dec. 3, 1937.

R. D. Watkins, of Minden, for appellant.

Cook, Cook & Egan, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sold on terms to C. A. Vandiver a Chevrolet sedan and, after default by him in monthly payments and with his consent, repossessed the car in Waldo, Ark., November 11, 1935, on such conditions, we are convinced, as to reinvest ownership in it. The car was driven by a young negro boy, engaged by plaintiff's agent, from Waldo to Minden, La., and there left on plaintiff's parking lot. Within a few hours, it was taken by this same boy without plaintiff's permission from the lot and driven by him toward Shreveport. It was wrecked by him on the highway before reaching his destination. The cost of necessary repairs to restore the car to good running condition was $218.90.

Plaintiff carried insurance with defendant protecting it against loss and damage from theft, robbery, and pilferage of the cars owned by it, within the limitations of the policy, excepting when done by any person or persons in the assured's household, service, or employment, etc. Demand was made on the insurer to indemnify plaintiff for the damage done the car, and, on its refusal to pay off, this suit for said amount, plus penalties and attorney's fees, was instituted. Plaintiff's contention is that the negro boy stole the car.

Defendant resists the demand, and in defense pleads: (1) That there was no theft of the automobile; and (2) that there would be no liability under the terms of the policy even if there had been a theft.

The lower court sustained one or both of these defenses and rejected plaintiff's demands. It has appealed.

Under defense No. 2, defendant urges two distinct propositions, viz.: (a) That the policy of insurance excludes automobiles sold under a conditional sale, mortgage, or lien agreement; and (b) that no liability lies thereunder on account of the theft of a car included within its coverage if the thief was at the time in the assured's service or employment; and it is alleged by defendant that the negro boy, at the time he took the car from plaintiff's lot, was in its employ.

We do not think there is merit in either of these two latter contentions, in view of the established facts of the case. It is true that the sale to Vandiver carried a condition that title would not pass to him until all the price was paid. As the sale was wholly consummated in Louisiana, this stipulation was without effect. It is a nudum pactum. Title passed subject to the mortgage and vendor's lien securing the deferred part of the price. This question ceases to be of importance to a decision of the case, since plaintiff repossessed and again became the unconditional owne: of the car. The purchase price note had been by it transferred to a finance company "with recourse," and it therefore had a serious interest in reacquiring the sedan. The note was thereafter paid by it.

The evidence does not disclose that the negro boy was in the service or employment of plaintiff when he took the car. He was taken to Waldo by defendant's agent to drive the car back to Minden, and did so. The terms of his engagement to render this service are not disclosed, nor was there any effort, so far as is revealed by the record, to prove same, or that he ever rendered any other service to plaintiff. In the absence of more convincing proof on this score than the record contains, we conclude he was not in plaintiff's employment.

We are of the opinion that the first defense urged is well founded. We do not think the boy took the car with the intent to deprive the owner of its use permanently or of appropriating it to himself, within the meaning of the definition of larceny. Certainly the record does not establish a felonious intent. It is not presumed. It is admitted by plaintiff's counsel in brief that when plaintiff's agents reached the wrecked car, the boy was on the ground watching it. He did not admit intent to steal it. Plaintiff's president did not charge him with the theft, but did prefer a charge against him for unlawfully taking and using the car without the owner's consent, as denounced by Act No. 91 of 1920, amending Act No. 168 of 1914. Under this charge, the negro boy was tried

and convicted in the district court of Webster parish. Plaintiff's president admits he did not discuss the car's taking with this boy. The boy was not called as a witness by either side.

▆▆▆▆ The burden rested upon plaintiff to prove (1) the taking of the car without the owner's consent, and (2) that the taking was felonious; in other words, with an intent to steal. Amplifying these two propositions we quote from 6 Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Ed., § 3771:

"While he need not show who stole his car, nor what has become of it, the insured, in an action of a policy insuring an automobile against theft, has the burden of proving every element of the larceny.

"The action remains, however, a civil action, and the quantum of proof required to establish the larceny follows the rules applicable thereto rather than those of criminal suits; and hence the insured is required to prove his case only by a fair preponderance of the evidence and not beyond a reasonable doubt.

"Such requirement is satisfied by proof that the insured car was taken from the possession of the insured without his knowledge and consent, and cannot be located, or was so taken, and found abandoned in a wrecked condition.

"A case of theft, including the requisite criminal intent, need not be proven directly, but may be established by circumstances from which the jury can infer such intent.

"In general, when the insured produces evidence to show the disappearance of the car without his knowledge or consent, he makes out a prima facie showing as to intent, and if the insurer still disputes liability for lack of the requisite intent, the burden is on it to sustain such denial by a preponderance of the evidence."

▆▆▆▆ When plaintiff proved that the car was taken from its possession without its consent, a prima facie showing as to intent was made out, but we are of the opinion that the fact that the taker did not flee from the scene of the wreck, but remained on the ground until plaintiff's agents arrived to retrieve the disabled car, which in a manner negatived felonious intent, coupled with plaintiff's president's action in prosecuting the culprit under the charge above mentioned, effectually overcame this prima facie showing and left plaintiff in the position of not having discharged the burden of proof on this vital issue.

In Boddie v. Home Insurance Company, 166 So. 178, this court held: "To constitute 'theft' of personalty, in addition to taking and carrying away without owner's consent, there must be felonious intent of taker to convert property to his own use and to permanently deprive the owner of his property."

A leading case on the subject is that of Phœnix Assurance Company v. Eppstein, 73 Fla. 991, 75 So. 537, L.R.A.1917F, 540, which we quoted from in the Boddie Case.

We are of the opinion the lower court correctly passed on the case, and the judgment appealed from is affirmed.

DREW, J., dissents.